State of Wisconsin, Plaintiff-Respondent,
v.
Claus Bruestle, Defendant-Appellant.
No. 04-0987.
Court of Appeals of Wisconsin.
Opinion Filed: December 15, 2004.
¶ 1 SNYDER, J.[1]
Claus Bruestle appeals from judgments finding him guilty of operating a motor vehicle while intoxicated (OWI) contrary to WIS. STAT. § 346.63(1)(a) and guilty of operating a motor vehicle with a prohibited alcohol content (PAC) contrary to § 346.63(1)(b). The issue before this court is whether the arresting officer used reasonable means to convey the implied consent warnings set forth in WIS. STAT . § 343.305(4). We agree with the circuit court that the arresting officer reasonably conveyed the implied consent warnings and affirm the judgments.

FACTS
¶ 2 On October 19, 2003, Bruestle was driving northbound on U.S. Highway 41 in Fond du Lac county. At 1:24 a.m., Wisconsin State Patrol Trooper Luke Newman stopped Bruestle because he was traveling approximately 86 miles per hour, considerably faster than the posted speed limit. Newman approached the vehicle and asked Bruestle for his driver's license. Bruestle handed the license to him without hesitation or objection. Newman detected an odor of intoxicants coming from the vehicle and noted that Bruestle's eyes were "red and glassy." Additionally, Newman noted that Bruestle spoke with a slight German accent; however, Bruestle responded in English to Newman's comments and questions regarding the reason for the traffic stop. Newman decided to have Bruestle perform various field sobriety tests and asked him to step out of his vehicle. Again, Bruestle did so without hesitation. Additionally, at no time during this initial conversation did Bruestle indicate that he could not speak English or that he was having trouble understanding Newman's directions.
¶ 3 Newman had Bruestle execute three field sobriety tests to confirm his initial suspicion that Bruestle was driving while intoxicated. First, during the horizontal gaze nystagmus test, Bruestle initially stated, in English, that he was having a hard time understanding Newman's directions. Newman repeated his instructions and asked if Bruestle understood them. Bruestle stated that he did not have any questions and began the test. Second, Newman explained and demonstrated the walk-and-turn test and again asked if Bruestle had any questions. Bruestle asked if he could count in German, and Newman stated that it would be fine. Finally, Newman explained and demonstrated the one-leg stand test. Bruestle stated that he did not understand the initial instructions, so Newman explained the test again, and Bruestle began the test before being told to do so. Based on Bruestle's performance during the sobriety tests, Newman asked Bruestle to submit to a preliminary breath test (PBT). Bruestle responded, in English, that he would take the test. The result was a reading of .136. Newman placed Bruestle under arrest for OWI.
¶ 4 Subsequently, Bruestle asked several times, in English, if Newman could give him a ride home or if he could be released to himself. Newman stated "no" to both questions. Newman informed Bruestle that he was being transported to St. Agnes Hospital for a blood draw. At the hospital, Newman read the Informing the Accused form to Bruestle paragraph by paragraph and asked if he had any questions before continuing on to the next section. Bruestle stated that he had no questions abo ut the form. The results of the blood draw indicated that Bruestle had a BAC of .174 g/100ml, more than two times the legal limit.
¶ 5 On January 7, 2004, Bruestle filed a motion to suppress the blood test results based upon the arresting officer's failure to comply with the implied consent statute. On February 10, Bruestle filed a supplemental motion, arguing by analogy that our ruling in State v. Begicevic, 2004 WI App 57, 270 Wis. 2d 675, 678 N.W.2d 293, supports his argument that the arresting officer did not use reasonable means to convey the implied consent warnings. The circuit court denied Bruestle's motion, and on March 29, 2004, ruled that Bruestle was guilty of both charges.

DISCUSSION
¶ 6 Bruestle argues that the arresting officer did not use reasonable means to reasonably convey the necessary implied consent warnings set forth in WIS. STAT . § 343.305(4). Whether the officer used reasonable means to convey the necessary implied consent warnings is a question of law that we review de novo. See State v. Baratka, 2002 WI App 288, ¶7, 258 Wis. 2d 342, 654 N.W.2d 875, review denied, 2003 WI 16, 259 Wis. 2d 104, 657 N.W.2d 708 (application of the implied consent statute to an undisputed set of facts is a question of law that we review independently). "To the extent the circuit court's decision involves findings of evidentiary or historical facts, those findings will not be overturned unless they are clearly erroneous." Id.
¶ 7 The Wisconsin Supreme Court recently confronted the issue of how to best ensure that law enforcement officers comply with the legislature's mandate requiring that apprehended drivers be informed about their rights and responsibilities under the implied consent law. State v. Piddington, 2001 WI 24, ¶18, 241 Wis. 2d 754, 623 N.W.2d 528. In Piddington, a Wisconsin State Patrol trooper stopped Piddington on suspicion of OWI. Id., ¶2. Piddington and his passenger immediately informed the arresting officer that he was deaf and communicated primarily via sign language. Id., ¶¶2-3. While checking Piddington's driver's license, the trooper asked his dispatch to track down a law enforcement officer who knew sign language. Id., ¶3. No American Sign Language (ASL) interpreter was available, so the trooper continued to communicate with Piddington through notes, gestures, and some speaking.[2]Id. Ultimately, the trooper arrested Piddington on a charge of OWI and drove to a Madison hospital to accommodate Piddington's request for a blood test. Id., ¶5.
¶ 8 At the hospital, a city of Madison police officer who had working knowledge of sign language, but was not certified in ASL, met the trooper and Piddington. Id. The arresting officer gave the Informing the Accused form to Piddington, and instructed him to read the form and initial each paragraph if he understood it, which he did. Id., ¶6. The police officer then read the form to Piddington and requested that he submit to a blood test, which Piddington did without objection. Id. The trooper testified that he had some difficulty communicating with Piddington; however, he did not proceed with any step in the arrest process until Piddington indicated that he understood. Id., ¶9. Ultimately the supreme court concluded:
[W]e conclude that whether law enforcement officers have complied with Wis. Stat. § 343.305(4) turns on whether they have used reasonable methods which would reasonably convey the warnings and rights in § 343.305(4).... [T]he State has the burden of proof of showing, by a preponderance of the evidence, that the methods used would reasonably convey the implied consent warnings. Also, in the implied consent setting ... the onus is upon the law enforcement officer to reasonably convey the implied consent warnings.
Whether the implied consent warnings given sufficiently comply with Wis. Stat. § 343.305(4) depends upon the circumstances at the time of the arrest; correspondingly, whether the methods used were reasonable and would reasonably convey those warnings also depends upon the circumstances facing the arresting officer. The purpose of Wis. Stat. § 343.305(4) to inform an accused driver, is fulfilled, rather than undermined, if the law enforcement officer must use reasonable methods that reasonably convey the implied consent warnings, in consideration of circumstances facing him or her. This interpretation ensures that an accused driver is properly advised under the implied consent law, without raising the specter of subjective confusion. Accordingly, we find that the legislature intended that law enforcement officers inform accused drivers of the implied consent warnings, and that duty is met by using those methods which are reasonable and reasonably convey those warnings under the circumstances at the time of the arrest.
Piddington, 241 Wis. 2d 754, ¶¶22-23 (footnotes and citations omitted).
¶ 9 The supreme court emphasized that the focus must be solely upon the conduct of the arresting officer. Id., ¶32 n.19. "Whether [the apprehended driver] subjectively understood the warnings is irrelevant. Rather, whether there was compliance with [WIS. STAT .] § 343.305 remains focused upon the objective conduct of the law enforcement officer or officers involved." Piddington, 241 Wis. 2d 754, ¶32 n.19.
¶ 10 Bruestle argues that our recent ruling in Begicevic supports his argument that the arresting officer did not use reasonable means to convey the implied consent warnings. In Begicevic, the arresting officer was confronted with a situation where the apprehended individual spoke primarily Croatian and German and had only a limited ability to speak in English. Begicevic, 270 Wis. 2d 675, ¶11. Begicevic was Bosnian but had lived in Wisconsin for six to eight years. Id. Officer Renee Kennedy, of the City of Brookfield Police Department, decided to investigate why Begicevic's vehicle was stopped, on an angle, in the left-turn lane in the middle of the intersection beyond the stop line painted on the roadway. Id., ¶4. After Kennedy approached the vehicle, she immediately knew that English was not Begicevic's primary language. Id., ¶17. He spoke with a heavy accent and immediately asked Kennedy if she spoke German. Id. Despite her inability to speak in German or Croatian, Kennedy did not make any effort to request an interpreter to assist her in communicating with Begicevic. Id., ¶18.
¶ 11 When Kennedy brought Begicevic to the police department, she was met by Elm Grove Police Officer Brian E. Gasse, who volunteered to help communicate with Begicevic because he had five years of schooling in German. Id. Gasse continued to have difficulty communicating with Begicevic and testified that Begicevic spoke some broken German, but he primarily tried to communicate with the officers in his native tongue. Id. While Kennedy was completing her paper work, Gasse explained, as best he could, why the citation was issued and the amount of the forfeiture. Id., ¶19. At the station, Kennedy did not make any effort to locate a fluent German interpreter to replace Gasse or to locate an interpreter fluent in Begicevic's native language. Id., ¶18.
¶ 12 Based on the officer's inability to effectively communicate with Begicevic, we held that Kennedy did not use reasonable methods to reasonably convey the implied consent warnings to Begicevic. Id., ¶20. In reaching this decision, we reasoned that unlike the trooper in Piddington, who used various methods to communicate and was assisted by a police officer who knew ASL, Kennedy's actions fell short of that standard. Begicevic, 270 Wis. 2d 675, ¶21. Kennedy did not attempt to obtain an interpreter despite only being able to communicate with Begicevic in broken German. Id. Additionally, when Kennedy read the Informing the Accused form in English, Gasse did not translate the form verbatim in German. Id.
¶ 13 Bruestle's argument that the arresting officer did not use reasonable means to convey the implied consent warnings is unpersuasive. The situation in Begicevic is distinguishable from Bruestle's situation. In Begicevic, the officers did not use reasonable means to convey the implied consent warnings to Begicevic because they were only able to communicate with him in broken German and with hand motions. Despite this significant communication barrier, the officers made no attempt to contact an interpreter to ensure that Begicevic understood his rights. Conversely, unlike Piddington and Begicevic, Bruestle communicated with Newman primarily in English throughout the arrest process. In fact, the only time that Bruestle did not speak English was when he briefly counted in German during a sobriety test. While Bruestle's knowledge of the English language is not dispositive, or even the focus of our inquiry, it does illuminate the circumstances that Newman faced at the time of Bruestle's arrest.
¶ 14 Bruestle argues that the State failed to meet its burden in proving that Newman's actions were reasonable by offering evidence that would only be relevant to Bruestle's subjective understanding, and thus not relevant under Piddington and Begicevic. The ultimate question in this case, however, is one of reasonableness, and we cannot evaluate the arresting officer's actions by examining them in a vacuum.
¶ 15 We agree with the State that Bruestle's subjective understanding of the implied consent warnings is irrelevant; however, his words and actions are relevant in determining the circumstances at the time of his arrest. Bruestle was listening to English music, conversed effectively in English, did not ask for an interpreter, and followed Newman's directions after some clarifications. These facts support the proposition that Newman's actions were reasonable. Additionally, Br uestle's own words demonstrated that he understood Newman. His responses were appropriate and would lead a reasonable police officer to believe that there was no need for an interpreter.
¶ 16 Throughout the entire arrest process, Newman asked Bruestle if he understood what was being asked of him. At no time did Newman proceed to the next step of the process without allowing Bruestle to ask questions to confirm his understanding of the situation. Unlike the arresting officer in Begicevic, Newman did not receive indications from Bruestle that he was not effectively communicating his directions. Although Bruestle stated that he did not understand what was being asked of him during some portions of the field sobriety tests, that is not sufficient to support a language barrier requiring the need for an interpreter.

CONCLUSION
¶ 17 Although Bruestle stated that he did not fully understand some portions of the field sobriety tests, we conclude that Newman addressed this communication problem by not proceeding to the next step in the arrest process without Bruestle acknowledging that he understood what was being asked of him. When Newman read the Informing the Accused form to Bruestle, he read it paragraph by paragraph and asked if Bruestle had any questions before proceeding. Based on the totality of the circumstances at the time of Bruestle's arrest, we conclude that Newman used reasonable means to convey the implied consent warnings.
By the Court.  Judgments affirmed.
NOTES
[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2001-02). All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] Piddington indicated that he could speech-read, often called "reading lips." State v. Piddington, 2001 WI 24, ¶3, 241 Wis. 2d 754, 623 N.W.2d 528.